# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**STEWART DOWDY,**

    **Plaintiff,**

**vs.**           No. CIV 98-1230 MV/DJS

**GILBANE BUILDING COMPANY,**

    **Defendant,**

**and**

**GILBANE BUILDING COMPANY,**

    **Defendant/Third Party Plaintiff,**

**vs.**

**SUNSETS WEST, INC.,**

    **Third-Party Defendant.**

**and**

**GILBANE BUILDING COMPANY,**

    **Plaintiff,**

**vs.**          No. CIV 99-472 BRB/DJS

**CNA INSURANCE COMPANY,**

    **Defendant.**

---

**REDWOOD FIRE & CASUALTY
INSURANCE COMPANY,**

    **Intervenor**.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** is before the Court for a bench trial on Gilbane's Complaint for Declaratory Action against CNA Insurance **[Doc. No. 1** in Civ. No. 99-472**]** for which the Court considered the Briefs on the Declaratory Action, Sunsets West's Motion for Directed Verdict on Excess Insurance

and supplemental brief, and the Briefs on Additional Insured Status. The Court, having considered all briefs and being otherwise fully advised, finds for CNA Insurance Company and against Gilbane in Gilbane's Declaratory Action Against CNA Insurance. Gilbane is not entitled to a defense and coverage in the *Dowdy* lawsuit. Further, the Court finds that Sunsets West's Motion for Directed Verdict on Excess Insurance **[Doc. Nos. 95]** is moot and will be denied.

## BACKGROUND

Plaintiff Stewart Dowdy brought a personal injury action against Gilbane Insurance Company for injuries arising from an accident that occurred while Dowdy was working on a construction site managed by Gilbane. Gilbane subsequently brought a third-party action against Sunsets West, Inc., a subcontractor on the project, for indemnification in the event Gilbane was found liable to Dowdy. Gilbane also filed an action against Sunsets West's insurer, CNA Insurance Company, seeking a declaratory judgment that CNA is required to provide a defense and coverage in the *Dowdy* lawsuit. That action was consolidated with the *Dowdy* action.

From December 5 through 10, 1999, a jury trial was held on the personal injury action by Dowdy. The jury, through a special verdict form, found that Gilbane had been negligent and that this negligence was a proximate cause of Dowdy's injuries and damages, but that Sunsets West had not been negligent. When asked to apportion the relative faults, the jury found that the negligence of Dowdy and Gilbane were each 50% of the cause. The jury awarded total damages of $890,200. Dowdy was granted judgment against Gilbane in the amount of $445,100 of compensatory damages. Moreover, as to Gilbane's Third-Party Claim for Indemnification against Sunsets West, judgment was granted for Sunsets West and against Gilbane.

Now before the Court is Gilbane's declaratory action against CNA for a defense and

coverage in the Dowdy action, submitted to the Court for a bench trial upon the trial briefs and exhibits.

The Court will now issue its findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

**FINDINGS OF FACT**

Gilbane Building Company was the general contractor on a school construction project at the Socorro School in El Paso, Texas. Sunsets West was one of the subcontractors on the project. Gilbane and Sunsets West entered into a contractual agreement dated October 10, 1996 whereby Sunsets West agreed to act as a trade contractor to provide certain labor, materials, equipment and services on the Socorro School project. Article 1.1, section 4 of the contract requires that Sunsets West "repair and/or replace in accordance with O.S.H.A. regulations all safety railing, barricades and other devices removed and/or damaged by Sunsets West's force." Pursuant to article 5 of the contract, Sunsets West agreed to indemnify and hold harmless Gilbane from claims and damages:

> arising out of or resulting from the performance or failure in performance of [Sunsets West's] work under this agreement provided that any such claim, damage, loss or expense: (1) is attributable to bodily injury . . . , (2) is caused in whole or in part, by any negligent act or omission of [Sunsets West] or anyone directly or indirectly employed by [Sunsets West], or anyone for whose acts [Sunsets West] may be liable, regardless of whether caused in part by a party indemnified hereunder.

*Contract Agreement*, at ¶ 5.2. Also under the contract, Sunsets West agreed to obtain liability insurance to guarantee its agreement to indemnify Gilbane. The relevant section provides,

> [Sunsets West] agrees to obtain, maintain, and pay for such contractual liability insurance coverage and endorsements as will insure the indemnification obligation of the trade contractor pursuant to paragraph 5.2.

*Id.* at ¶ 5.4.

Pursuant to this agreement, Sunsets West obtained general commercial liability insurance coverage with CNA Insurance Company, Policy No. 1057212521, and obtained an endorsement making Gilbane an additional insured under the policy. The endorsement was limited in its scope as follows:

> B. The insurance provided to the additional insured is limited as follows:
>
>> 1. That person or organization is only an additional insured with respect to the liability arising out of:
>>
>>> a. Your[1] premises;
>>>
>>> b. "Your work" for that additional insured; or
>>>
>>> c. Acts or omissions of the additional insured in connection with the general supervision of "your work."

The endorsement defined "your work" as follows:

> a. Work or operations performed by you or on your behalf, and
>
> b. Materials, parts or equipment furnished in connection with such work operations.

The endorsement also provides that the insurance was excess over other valid and collectible insurance available to the additional insured. The relevant provision of the endorsement states,

> This insurance is excess over:
>
> Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and non-contributing. Where required by contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

---

[1] "You" and "your" refers to the named insured, Sunsets West.

Though Gilbane did not receive a copy of the CGL policy with the endorsement until after this suit was filed, it did receive a Certificate of Insurance, as required by the contract between Gilbane and Sunsets West, which states that Gilbane was listed as an additional insured and that a waiver of subrogation was applicable.

During the time Dowdy was injured on the Socorro School project, Gilbane had a commercial general liability insurance policy with National Union Fire Insurance Company ("National Union") which had a $500,000 deductible. The policy states that it is excess over other insurance and, specifically, over claims arising out of the actions of a hired subcontractor who has agreed to either indemnify the insured against claims resulting from the actions of the subcontractor or has agreed to name the insured as an additional insured on the subcontractor's commercial general liability policy.

Stewart Dowdy worked on the Socorro School project as an employee for Mayhew Building Specialties – a subcontractor to Gilbane on the project. On June 5, 1997, Dowdy fell from the landing in one of the stairwells in the project – "Stairwell A." He was moving his tool case on a wagon which got stuck in the door of the stairwell. There was no hand railing on the landing or stairway and in pulling the wagon through the door, Dowdy fell off the staircase and suffered injuries.

Prior to Dowdy's accident Sunsets West had erected scaffolding in Stairwell A and then removed this scaffolding. At the beginning of the project, there were temporary wooden handrails in Stairwell A. Sunsets West did not remove the wooden handrails in Stairwell A at any time. Because the permanent aluminum handrails for the stairwell were delayed, Gilbane requested that Sunsets West install semi-permanent handrails and Sunsets West agreed to do so. At the time

5

Dowdy fell in Stairwell A, Sunsets West employees were cutting the steel for the handrails, but had not yet begun work in the stairwell itself. Sunsets West installed the semi-permanent handrails in Stairwell A after Dowdy's accident.

On February 2, 1998, AIG Claims Services wrote a letter to Sunsets West on Gilbane's behalf demanding that it defend Gilbane in the *Dowdy* action.[2] On October 6, 1998, Dowdy filed a complaint against Gilbane, alleging that Gilbane was negligent in failing to have a railing on the stairwell, failing to adequately warn workers that there was no railing, and maintaining the physical facilities. By letter dated November 11, 1998, CNA refused to defend Gilbane in the matter on the basis that Sunsets West was not involved in the removal of the handrails prior to Dowdy's accident.

## CONCLUSIONS OF LAW

Jurisdiction is proper under 28 U.S.C. § 1332.

The Court must apply Texas law in this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Gilbane asserts that as an additional insured under Sunsets West's insurance policy with CNA, Gilbane is entitled to defense and coverage for claims in the *Dowdy* action. The threshold issue the Court must address is whether the additional insured endorsement of Gilbane in Sunsets West's general commercial liability policy with CNA applies to Gilbane in the *Dowdy* action. The duty to defend is broader than the duty to indemnify. *St. Paul Insurance Company v. Texas Dep't. of Transp.*, 999 S.W.2d 881, 884 (Tex. App. 1999) (citing cases). An insurer is required

---

[2] Though Dowdy had not yet filed suit against Gilbane, his attorney had presented a claim for damages.

to defend against any claim which may be covered by the policy. *National Union Fire Ins. Co. v. Cowan*, 939 S.W.2d 139, 141 (Tex. 1997). The Texas courts follow the "eight corners" rule under which the court determines whether an insurer has a duty to defend based on the allegations in the pleading and the language of the insurance policy. *Id.* (citing cases). In making this assessment, the allegations in the pleading are construed liberally, and doubts are resolved in the insured's favor. *Id*. The court does not look to the facts determined before, during, or after the suit in assessing whether there is a duty to defend. *Cullen v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App. 1993). Moreover, the court looks to the factual allegations about the source of the damages rather than the legal theories asserted. *National Union Fire Ins.*, 939 S.W.2d at 141. If the underlying complaint does not allege facts within the scope of coverage, the insurer does not have a duty to defend. *See Texas Med. Liab. Trust v. Zurich*, 945 S.W.2d 839, 842 (Tex. App. 1997).

When a general contractor is an additional insured on a subcontractor's commercial general liability policy, Texas courts have found that the insurer had a duty to defend actions brought against the general contractor by an employee of the subcontractor who was injured on the job. *See e.g., McCarthy Brothers Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725 (Tex. App. 1999); *see also Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451 (Tex. App. 1999) (service contractor's commercial general liability insurer had duty to defend owner who was additional insured on policy when owner was sued for service contractor employee's injury which arose out of the contractor's work). In *McCarthy*, the general contractor was listed an additional insured on the subcontractor's commercial general liability policy for liability "arising out of" the subcontractor's work for the general contractor. The court found that "arising out of" has a

7

broad definition in the additional-insured context. *McCarthy*, 7 S.W.3d at 729-30 (citing *Mid-Century Ins. Co. v. Lindsey*, 997 F.W.2d 153, 156 (Tex. 1999); *Admiral*, 988 S.W.2d at 455). As the *Admiral* court explained,

> [F]or liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

*Admiral Ins. Co.*, 988 S.W.2d at 454. In *McCarthy*, the subcontractor employee was injured on the construction site while doing work required by the subcontractor's contract with the general contractor. The court concluded that, therefore, there was a causal connection between the employee's injury and the subcontractor's performance of its work for the general contractor such that the liability "arose out of" the subcontractor's work for the general contractor. *McCarthy*, 7 S.W.3d at 730.

The critical question in the case at bar is whether Gilbane's liability to Dowdy arose from Sunsets West's work for Gilbane or Gilbane's supervision of Sunsets West such that the additional insured endorsement applies in this case and CNA has a duty to defend and provide coverage for Gilbane. Applying the "eight corners rule," the Court turns to the complaint in the underlying action and the language in the additional insured endorsement. In the CNA endorsement on which Gilbane is listed as an additional insured, CNA agreed to cover Gilbane for liability "arising out of" Sunsets West's work or the additional insured's general supervision of Sunsets West's work. Dowdy's complaint alleged that Gilbane was negligent in failing to have a railing on the stairwell, failing to adequately warn workers that there was no railing, and inadequately maintaining the physical facilities. Even applying the broad construction of "arising

8

out of" and the rule that any doubt should be resolved in favor of the insured, *see, McCarthy*, 7 S.W.2d at 728, the Court finds that Gilbane is not covered by the additional insured endorsement.

Gilbane correctly asserts that the underlying complaint against the general contractor need not include allegations against the subcontractor for the additional insured endorsement to come into effect. *See id.* However, the cases upon which Gilbane relies are distinct from this case in a critical respect. In *McCarthy* and *Admiral* it was clear from the pleadings that the injured employee was hurt while completing his company's work for the general contractor or owner. Accordingly, the courts could determine from the eight corners of the pleading and additional insured endorsement that the liability arose out of the named insured's work for the additional insured. The causal connection between the named insured and the additional insured was thus satisfied and the additional insured endorsement applied. In this case, however, that nexus is not established. For Gilbane to be covered by the additional insured endorsement, there must be a connection between Dowdy's allegations that he was injured because of the absence of handrails in Stairwell A and Sunsets Wests' work or Gilbane's supervision of that work. While the connection is established in cases where the injured worker was employed by the subcontractor who held the insurance, here Dowdy was employed by Mayhew, rather than the named insured – Sunsets West. The complaint makes no allegations that Dowdy's accident was in any way related to Sunsets West's work or Gilbane's supervision of that work. Further, Gilbane cites to no authority supporting the application of an additional insured endorsement in a situation such as this where the injured worker was employed by a third party rather than the named insured. Looking to the eight corners of Dowdy's complaint and the additional insured endorsement, the Court cannot conclude that the endorsement covers Gilbane's action in the *Dowdy* suit.

Though the Court does not base its decision on the facts presented at trial, it is worth noting that the Court would reach the same result based on its findings of the facts. Pursuant to both the contractual agreement between Sunsets West and Gilbane and the additional insured endorsement, to establish that CNA was obligated to provide coverage to Gilbane in the *Dowdy* action, the Court must find that Gilbane's liability to Dowdy arises from Sunsets West's work or Gilbane's supervision of it. Gilbane asserts that this requirement has been met because "Sunsets West was erecting scaffolding and removing hand railing in the stairwell, then subsequently working on the new temporary stair wall without any hand railings being present." *Gilbane's Brief Regarding Declaratory Action*, at 4. However, the Court concludes that Sunsets West had completed its work with the scaffolding prior to Dowdy's accident, and that it had not yet begun to work in the stairwell installing the semi-permanent railings when Dowdy fell in the stairwell.[3] Because Sunsets West was not doing any work in the stairwell where Dowdy fell at the time of the accident, Gilbane's liability did not arise from Sunsets West's work or its supervision of this work.

Having found that the additional insured endorsement does not apply to Gilbane, the Court need not reach Gilbane's additional arguments regarding whether the policy was ambiguous and should be construed as excess or primary.

For the foregoing reasons, **the Court finds for CNA and against Gilbane on Gilbane's declaratory action.**

**WHEREFORE,**

---

[3]Based on the jury's verdict that Sunsets West was not negligent, the jury likely also concluded that Sunsets West was not responsible for taking down the hand railings in Stairwell A and was not working in the stairwell during the time of the accident.

**IT IS HEREBY ORDERED** that Sunsets West's Motion for Directed Verdict on Excess Insurance **[Doc. Nos. 95]** is **denied as moot.**

**DATED** this 26th day of May, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorney for Dowdy:
Jeffrey A. Dahl

Attorney for Gilbane:
Nathan H. Mann

Attorney for Sunsets West and CNA Insurance:
David Houliston